UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BERNARDO MENDOZA CARDENAS, Petitioner, v. TODD BLANCHE, *et al.*, Respondents. | Case No. 2:26-cv-01487-MMD-EJY ORDER |

## I. SUMMARY

Petitioner Bernardo Mendoza Cardenas, an immigration detainee challenging his ongoing federal detention at Nevada Southern Detention Center, filed a counseled first amended federal habeas corpus petition under 28 U.S.C. § 2241. (ECF No. 8 ("Petition").)[1] Petitioner also moved to proceed *in forma pauperis* ("IFP"). (ECF No. 18.) The Court finds good cause exists to grant the IFP application. (*Id.*) Because the immigration judge ("IJ") relied on an erroneous criminal record in denying Petitioner bond, the Court grants the Petition and orders Petitioner released.

## II. RELEVANT BACKGROUND

Petitioner is a citizen of Mexico. (ECF No. 8 at 4.) Petitioner entered the United States with his pregnant wife and three children on a visitor visa. (*Id.*) After his fourth child was born in the U.S. with medical complications, Petitioner remained in the country for the next ten years, overstaying his visa. (*Id.* at 5.)

On August 14, 2025, Petitioner was arrested for felony drug possession and misdemeanor use/possession of drug paraphernalia. (ECF No. 8-2 at 3-4.) The case number for these criminal charges before Sparks Criminal Court is 25-SCR-01032. (*Id.* at

[1]Respondents responded (ECF No. 16) and Petitioner replied (ECF No. 17).

2.) Petitioner was released on bail. (*Id.* at 5.) Petitioner pled guilty to the misdemeanor charge and the felony drug possession charge was dismissed. (*Id.* at 4.) On October 22, 2025, Petitioner was convicted and sentenced for misdemeanor possession of drug paraphernalia under NRS § 453.566. (*Id.* at 5.) Petitioner's I-213 Form, a summary record prepared by the Department of Homeland Security ("DHS"), states that on October 22, 2025 Petitioner "was convicted in the Sparks Justice Court for the offense of DUI, a misdemeanor, in violation of NRS 585C.110." (ECF No. 8-1 at 3.) The I-213 then cites case number 25-SCR-01032. (*Id.*)

Immigration and Customs Enforcement ("ICE") detained Petitioner after his conviction. (ECF No. 8 at 5.) Petitioner has now been in ICE custody for nine months. On January 7, Petitioner had a custody redetermination hearing before an IJ ("Bond Hearing"). (*Id.* at 6.) Petitioner did not have an attorney. (*Id.*) According to Petitioner, he was not placed under oath.[2] (ECF No. 17 at 4.) At the Bond Hearing, the IJ asked if Petitioner "was arrested for driving under the influence and convicted in 2025." (ECF No. 8-3 at 1:40.) Petitioner replied yes. (*Id.* at 1:54.) The IJ asked Petitioner if he had ever been arrested for any other offense. (*Id.* at 2:00.) Petitioner replied no. (*Id.* at 2:06.) The IJ asked Petitioner if he had a valid state-issued drivers' license, to which Petitioner replied no. (*Id.* at 2:08.) The DHS attorney told the IJ that Petitioner had a pending felony drug charge possession. (*Id.* at 4:15.) The DHS attorney opposed bond on danger to the community grounds, citing the recency of Petitioner's DUI conviction and felony drug charge which the government attorney represented arose from two separate incidents.

[2]This is a disputed fact. Respondents argue Petitioner's statements at the Bond Hearing were under oath but do not cite evidence to support this conclusion. (ECF No. 16 at 3.) The audio recording from the Bond Hearing does not include Petitioner being placed under oath. (ECF No. 8-3.)

(*Id.* at 6:22.) The IJ asked Petitioner why he "picked up two convictions[3] in the last year" after living in the United States for over 12 years. (*Id.* at 8:10.) Petitioner responded that he didn't know why that would be. (*Id.* at 8:35.) In response, the IJ stated that he was unable to grant Petitioner bond. (*Id.* at 8:45.) The IJ explained that Petitioner had the right to appeal this decision. (*Id.* at 8:55.) Petitioner responded that he didn't know what to do, that he had been in custody for months, that he has his child and "doesn't want to be here anymore." (*Id.* at 9:45.) The IJ responded: "Well, the appeal process would probably take about five months." (*Id.* at 10:22.) After some back and forth with the IJ, Petitioner confirmed he would like to reserve his right to appeal the Bond Hearing decision. (*Id.* at 11:10.)

On May 8, 2026, Petitioner appeared before another IJ for adjudication on the merits of his claim for relief from deportation, specifically his application for cancellation of removal. ("Removal Hearing"). (ECF No. 8 at 7.) Again, Petitioner was not represented by an attorney. (ECF No. 8-5 at 00:19.) Petitioner was sworn in and gave testimony under oath. (*Id.* at 4:50.) Relying on the Form I-213, the IJ asked Petitioner about a DUI conviction from October 2025. (*Id.* at 14:00, 17:25.) Petitioner responded that he doesn't know how to drive. (*Id.* at 14:15.) When the IJ asked Petitioner if he'd ever been arrested before, Petitioner explained this this was the first time. (*Id.* at 14:25.) The IJ asked why Petitioner was taken into custody at the Washoe County jail, and Petitioner responded that he was detained for having drugs on him. (*Id.* at 15:38.) Petitioner confirmed that he pled guilty but "paid everything" and "doesn't owe anything." (*Id.* at 16:40.) The IJ asked if he pled guilty to "possession" and Petitioner confirmed yes. (*Id.* at 16:55.) The IJ conferred with the DHS attorney, stating "it seems like he probably has a controlled substance offense issue here, it was listed as pending in the I-213, he's admitted to it."

---

[3]The court translator translated this word to Petitioner in Spanish as "*acusaciones*" which literally translates to accusations and generally refers to charges not convictions. (ECF No. 8-3 at 8:20.)

(*Id.* at 19:50.) The DHS attorney confirmed and also argued Petitioner did not meet his hardship burden regarding his son. (*Id.* at 20:05.) The IJ outlined for Petitioner the requirements for cancellation of removal: presence for ten years, a lack of disqualifying criminal convictions, and hardship to a U.S. citizen family member substantially beyond what would be ordinarily expected. (*Id.* at 20:30.) The IJ acknowledged Petitioner met the first requirement but told Petitioner "unfortunately for you, your possession offense may constitute a disqualifying offense or does, I don't have a record of that but you have admitted to it." (*Id.* at 21:06.) The IJ goes on to state that she also does not find sufficient hardship regarding Petitioner's U.S. citizen son due to their lack of contact the past two years. (*Id.* at 21:28.) The IJ concluded that "for those reasons" she must deny Petitioner's request for cancellation of relief. (*Id.* at 22:40.) The IJ also denied voluntary departure because "controlled substance-related offenses are very serious here in the United States." (*Id.* at 22:50.) The IJ informed Petitioner that he has the right to appeal her decision ordering his removal to Mexico. (*Id.* at 23:38.) Petitioner responded "If you want, I will go to Mexico. I can't take it anymore, I'm tired." (*Id.* at 23:55.) The IJ accordingly denoted that Petitioner waived his right to appeal in her written order. (ECF No. 8-7 at 5.)

Despite waiving appeal at the Removal Hearing, Petitioner appealed the Removal Hearing decision to the Board of Immigration Appeals ("BIA") just three days later. (ECF No. 16-1 at 3.) On June 22, the BIA summarily dismissed Petitioner's appeal because Petitioner waived appeal at the Removal Hearing and "made no argument that decision to waive appeal was not a knowing and intelligent one." (*Id.*) A few days later, Respondents filed a motion before this Court for leave to transfer Petitioner, arguing Petitioner was now subject to lawful removal following the BIA dismissal. (ECF No. 10.) After expedited briefing, the Court denied the motion to transfer, concluding that Petitioner had the right to appeal the BIA's decision to the Ninth Circuit. (ECF Nos. 11, 14, 15.)

///

## III. DISCUSSION

In Claims One and Two of the Petition, Petitioner argues he should be released because the denial of his bond on the basis of dangerousness and the denial of his cancellation of removal were both legally erroneous. (ECF No. 8 at 8.) The Court's jurisdiction under 28 U.S.C. § 2241 is limited to determining the lawfulness of Petitioner's ongoing detention and does not extend to reviewing an IJ's determination regarding immigration relief. *See* 8 U.S.C. § 1252(g) (depriving jurisdiction over cases arising from the agency's discretion "to commence proceedings, adjudicate cases, or execute removal orders"); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (affirming habeas jurisdiction under Section 2241 to review the lawfulness of ongoing civil immigration detention). However, the Court will address Respondents' argument that the status of Petitioner's immigration case changes the statute under which the Court analyzes the lawfulness of Petitioner's detention. (ECF No. 15 at 4-5.) The Court finds the denial of Petitioner's immigration relief does not undermine Petitioner's claim for habeas relief from detention. The Court further agrees with Petitioner that the denial of his bond on the basis of dangerous was legally erroneous and grants the Petition on this basis.

### A. Mandatory Post-Removal Order Detention

While the argument is not particularly clear, Respondents seem to argue Petitioner is subject to mandatory detention under 28 U.S.C. § 1231. (ECF Nos. 16 at 4-5; 17 at 6-8.) Under this statute, individuals with final removal orders are subject to mandatory detention during a 90-day "removal period." 8 U.S.C. §§ 1231(a)(1), (2)(A). The removal period begins "on the *latest* of the following:" (i) the date the removal order becomes administratively final (ii) the date the removal order is judicially reviewed by the Court of Appeals (iii) the date of release from non-immigration detention or confinement, if applicable. *Id.* at § 1231(a)(1)(B) (emphasis added).

///

The Court finds Petitioner is not subject to mandatory post-removal order detention under § 1231. When the BIA summarily denied Petitioner's appeal, Petitioner's removal order became administratively final.[4] (ECF No. 10-1); *see* 8 CFR § 1241.1(a). However, as Petitioner notes, he has the right to petition for judicial review of the BIA's decision by the Ninth Circuit Court of Appeals. (ECF No. 17 at 7-8); *see* 8 U.S.C. § 1252. The Court agrees that Petitioner is within the statutory 30-day window to petition for review and accordingly the removal period mandating detention has not begun. *See id.; see also Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) ("[O]nly if [the Ninth Circuit] enter[s] a final order denying [petitioner's] petition for review will the statutory source of the Attorney General's detention authority shift from § 1226(a) to § 1231(a)."). Therefore, the Court finds Petitioner is not subject to mandatory detention under § 1231.

**B. Dangerousness Determination**

Petitioner argues he should be released because the IJ's denial of bond based on dangerousness was legally erroneous.[5] (ECF No. 8 at 8.) An IJ's determination of

---

[4]The Court notes, though it need not reach the issue here, that it does not find Petitioner validly waived his right to appeal at the Removal Hearing as the BIA concluded. "For a waiver to be valid, the government must establish by 'clear and convincing evidence' that the waiver is 'considered and intelligent.'" *United States v. Pallares-Galan*, 359 F.3d 1088, 1096-97 (9th Cir. 2004) (citation omitted). Waiver of appeal is not "considered and intelligent" where an IJ erroneously informs an immigration respondent that they are not eligible for certain relief. *See Id.* at 1096 ("Pallares' waiver of his right to appeal his removal order was not 'considered and intelligent' because the IJ erroneously informed him that he was not eligible for relief from deportation on account of his 1999 state misdemeanor Annoy/Molest conviction.") At the Removal Hearing here, the IJ denied Petitioner's application for cancellation of removal in part because Petitioner's "possession offense may constitute a disqualifying offense or does." (ECF No. 8-5 at 21:05, 22:43.) However, this was a legally erroneous conclusion under controlling Ninth Circuit precedent. Petitioner's misdemeanor conviction for possession of drug paraphernalia under Nevada statute does not categorically disqualify Petitioner from seeking cancellation of removal. *See Madrigal-Barcenas v. Lynch*, 797 F.3d 643, 645 (9th Cir. 2015).

[5]Respondents argue that "Petitioner must have failed to meet [his] burden [at the bond hearing] based on the Immigration Court's decision." (ECF No. 16 at 3.) The Court rejects this circular reasoning. Petitioner challenges the IJ's determination as legally

dangerousness at a bond hearing, "even if primarily factual," is a reviewable mixed question of law and fact. *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609 (W.D. Wash. Apr. 9, 2026) (citing *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024)). An IJ's dangerousness determination is reviewed for abuse of discretion. *See Martinez*, 124 F.4th at 784. While the Court "cannot reweigh evidence" under this standard, the Court may determine whether the IJ applied the correct legal standard. *Id.* at 785 (citation omitted).

The legal standard for determining whether to deny bond due to dangerousness or flight risk is outlined in *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006). *Matter of Guerra* outlines nine factors for the IJ to apply:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitled the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Id.* at 40. Respondents argue that "custody redeterminations are in fact discretionary" and these *Guerra* factors are "merely factors to be considered and there is no formulaic standard." (ECF No. 16 at 4.) Respondents imply that because of this, Petitioner does not have a basis to challenge the IJ's dangerousness determination. The Ninth Circuit disagrees. "Even though what constitutes 'dangerousness' is malleable and involves agency discretion, [the Supreme Court] instructs that this is still a legal standard so long

---

erroneous, apart from what Respondents dismissively describe as "some claim of due process violations." (*Id.*) Accordingly, the Court is not persuaded to simply cite the IJ's decision as proof that his determination was lawful.

as federal courts can 'assess whether an IJ correctly applied the statutory standard to a given set of facts.'" *Martinez*, 124 F.4th at 783 (quoting *Wilkinson v. Garland,* 601 U.S. 209, 221 (2024)).

Here, the Court finds the IJ did not correctly apply the legal standard to this given set of facts. As Petitioner details, and Respondents do not dispute, nearly all the *Guerra* factors favor Petitioner. (ECF No. 8 at 9.) The IJ based his determination on one factor, Petitioner's "criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." (ECF No. 8-6 at 2); *Guerra*, 24 I. & N. Dec. at 40. At the Bond Hearing, the IJ concluded Petitioner was a danger to the community and ineligible for bond because Petitioner "picked up two convictions in the last year." (ECF No. 8-3 at 8:10.) In his written order, the IJ cites to a 2025 DUI conviction listed on Petitioner's I-213 form and a "pending arrest for possession of methamphetamine." (ECF No. 8-6 at 2.) At the Bond Hearing, the IJ relied on confusing and compound questioning of *pro se* Petitioner[6] and the government's representation to the IJ that Petitioner had both a DUI conviction and a pending felony drug possession charge arising from two separate incidents. (ECF Nos. 8-1 at 3; 8-3 at 6:35.) However, based on the record before this Court, Petitioner has, and had at the time of his Bond Hearing, one misdemeanor conviction for use or possession of drug paraphernalia. (ECF No. 8-2.)[7]

---

[6]The Court agrees with Petitioner's characterization of the IJ's questioning regarding this DUI at the Bond Hearing was compound and therefore potentially misleading. (ECF No. 17 at 3.)

[7]Respondents seem to argue that because Petitioner, in his *pro se* unsworn testimony before the IJ at his Bond Hearing, answered compound questions indicating he had been arrested for a DUI and convicted in 2025, therefore Petitioner does in fact have two convictions, including a DUI. (ECF No. 16 at 3-4.) At the same time, Respondents argue Petitioner's response to the same line of questioning regarding not having any other arrests was a "false statement made under oath," citing later testimony where Petitioner acknowledges his arrest for a controlled substance. (*Id.* at 3.) The Court is not persuaded by Respondents' continuing insistence that "there are two convictions," in contradiction

"There cannot be a correct application of a standard to a set of facts when the facts relied on are incorrect." *K.G.M.Q. v. Bondi*, 2026 WL 962609, at *11 (finding an IJ's dangerousness determination was legally erroneous because the IJ based her finding on the mistaken belief that petitioner had a felony rather than a misdemeanor conviction). The Court concludes that the IJ abused his discretion here in his erroneous application of the law to the facts in this case. Moreover, immigration respondents like Petitioner are "entitled to bond redetermination[s] based on truthful and complete information about [their] criminal activity." *Montero-Martinez v. Mattos*, No. 2:25-CV-02391-CDS-DJA, 2026 WL 674497, at *1 (D. Nev. Mar. 9, 2026) (citing *Singh v. Holder,* 638 F.3d 1196, 1206 (9th Cir. 2011)). In this way, the IJ's reliance on "materially false information" in denying Petitioner bond violated his "right to due process." *Id.* at *2.

**C. Remedy**

A district court has equitable discretion "as law and justice require" in remedying unlawful detention in habeas petitions. *Ramirez Brown v. Davenport*, 596 U.S. 118, 127-28 (2022). Petitioner requests immediate release from custody as the sole remedy for his unlawful detention. (ECF No. 8 at 18-19.) Release is the "typical remedy" for "unlawful executive detention." *Munaf v. Geren,* 553 U.S. 674, 693 (2008). Courts across the country, including in this District, have remedied ongoing unlawful detention through immediate release, rather than ordering another bond hearing.[8] *See, e.g., J.U. v. Maldonado*, 805 F. Supp. 3d 482, 498 (E.D.N.Y. 2025); *Portillo v. Blanche*, No. 2:26-CV-01373-RFB-MDC, 2026 WL 1493876, at *6-9 (D. Nev. May 28, 2026); *Cruz v. Bondi*, No. 2:26-cv-01148-MMD-NJK, at *4-5 (D. Nev. June 26, 2026). Here, the Court particularly

---

with the current record before the Court and without producing any substantiating evidence. (*Id.* at 4.)

[8]Petitioner cites four cases where various district courts directed respondents to provide a bond hearing, rather than immediate release. (ECF No. 8 at 18-19) (citations omitted).

contemplates that Petitioner has been detained for nine months. *See Zheng v. Rokosky*, 826 F. Supp. 3d 545, 563 (D.N.J. 2026) ("[A]s Petitioner has already been deprived of his liberty for five months, release is the only just remedy.). Considering this lengthy detention, the Court invokes its equitable discretion to grant Petitioner's requested remedy and orders his release.

**IV. CONCLUSION**

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Petition. In particular, because the Court grants the Petition on Claims One and Two, it does not reach Claim Three as it would not alter the Court's ruling.

It is therefore ordered that Petitioner's IFP application is granted. (ECF No. 18.)

It is further ordered that the Petition is granted on Claims One and Two. (ECF No. 8.) Respondents must immediately release Petitioner no later than 5:00 PM on Wednesday July 22, 2026, subject to reasonable terms of supervision. *See* 8 U.S.C. §§ 1231(a)(6), (a)(3). Determining reasonable terms of supervision shall not in any way impede the immediate release of Petitioner.

It is further ordered that in effectuating Petitioner's release, the parties must comply with the stipulated terms for release adopted in the class action lawsuit pending before the District. *See* Joint Proposed Process for the Release of Habeas Petitioners from Immigration Detention, Jacobo-Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC (D. Nev. June 12, 2026), (ECF No. 158).

It is further ordered that the parties shall file a joint status report by Thursday, July 23 confirming Respondents' compliance with this Order.

///

///

The Clerk of Court is instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

DATED THIS 21st Day of July 2026

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE